# IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN THE MATTER OF A § 
MEMBER OF THE BAR OF THE § No. 261, 2015 
SUPREME COURT OF § 
DELAWARE: § Board on Prof. Responsibility 
 § Case No. 111858-B 
PATRICK E. VANDERSLICE, § 
 § 
Respondent. § 

Submitted: June 12, 2015
Decided: June 19, 2015

Before **HOLLAND, VALIHURA**, and **VAUGHN**, Justices.

## ORDER

This 19th day of June 2015, it appears to the Court that:

(1)     This is a lawyer disciplinary proceeding. On May 26, 2015, a panel of the Board on Professional Responsibility ("the Board") filed its Report with this Court, dated May 22, 2015, recommending that the respondent, Patrick E. Vanderslice, be disbarred from the practice of law in Delaware. Neither the Office of Disciplinary Counsel ("ODC") nor Vanderslice has filed any objections to the Board's report.

(2)     The Court has considered the matter carefully. Vanderslice admitted all of the ethical violations alleged in the ODC's petition against him. The Board carefully considered Vanderslice's ethical violations, his intentional state of mind, the actual injuries caused by his misconduct, and

all of the applicable aggravating and mitigating factors. Under the circumstances, we find the Board's recommendation of disbarment to be appropriate. We therefore accept the Board's findings and recommendation for discipline.

NOW, THEREFORE, IT IS ORDERED that the Board's May 22, 2015 Report (attached hereto) is ACCEPTED. Patrick E. Vanderslice is hereby DISBARRED from the practice of law in Delaware. His name shall be stricken immediately from the roll of attorneys licensed to practice before the Courts of this State. The Office of Disciplinary Counsel shall disseminate this Order in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.

BY THE COURT:

/s/ Karen L. Valihura
Justice

2

# REPORT OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

EFiled: May 26 2015 11:14AM EDT
Filing ID 57289314
Case Number 261,2015

In the Matter of a Member of the Bar of the Supreme Court of the State of Delaware:

PATRICK E. VANDERSLICE,     )
                        )
         Respondent.     )    **CONFIDENTIAL**
                        )    Board Case No. 111858-B

## REPORT OF THE BOARD AND RECOMMENDATION OF SANCTION ON PETITION FOR DISCIPLINE

This is the report of the Board of Professional Responsibility ("Board" or "Panel") on proceedings instituted by a Petition for Discipline ("Petition") filed by the Office of Disciplinary Counsel ("ODC") on October 13, 2014. By stipulation of the parties and approval of the Panel Chair, the originally-scheduled hearing on the Petition was continued, and a hearing was held on March 12, 2015, before Board Panel members Wayne J. Carey, Esquire, Louise Roselle, and Danielle K. Yearick, Esquire, Chair. Jennifer-Kate Aaronson, Esquire, represented the ODC and Respondent was represented by Dennis Schrader, Esquire.

This Petition arises out of conduct of the Respondent in misappropriating fees received for legal services to clients while he was engaged in the private practice of law with the firm of Moore & Rutt, P.A. ("M&R") in Georgetown, Delaware, and Respondent's failure to disclose those misappropriated fees in the course of his prior disciplinary proceedings, and in his Petition for Reinstatement and testimony related thereto. The ODC's Petition before this Board alleges seven Counts of professional misconduct, in violation of Rules 1.15(a), 3.3(a)(1), 8.1(a), 8.4(b), 8.4(c), and 8.4(d) (two Counts) of the Delaware Lawyers' Rules of Professional Conduct ("DLRPC"). By

1

Amended Answer dated February 11, 2015, Respondent admits to all Counts in the Petition.[1] Therefore, the issue for this Panel is the appropriate sanction.

Because the Supreme Court's review is *de novo*, the Panel shall nonetheless address the evidence and testimony related to the merits of the disciplinary violations, in addition to its analysis in support of this Panel's recommendation for a sanction of disbarment.

## I. PROCEDURAL BACKGROUND

On April 4, 2012, ODC filed a Petition for Discipline against Respondent for professional misconduct while engaged in the practice of law for M&R between December 2010 and September 2011. In connection with that disciplinary proceeding, Respondent was deposed by ODC on May 9, 2012, and a hearing was conducted before the Board on May 17, 2012. The Board issued its decision on the alleged violations on August 3, 2012, and the Delaware Supreme Court issued its decision on October 12, 2012, and imposed a sanction of a one-year suspension from the practice of law; in addition, a Receiver was to be appointed to protect the interests of Respondent's clients and the public, and Respondent was ordered to cooperate in all respects with Receiver, including providing the Receiver with all office books and records; and Respondent was further ordered to fully cooperate with the ODC in any of its other efforts to monitor his compliance. [2] Under the 2012 disciplinary proceeding, Respondent was found to have

---

[1] In his Amended Answer, Respondent admitted all Counts except paragraph 58 of Petition Count III for violation of Rule 8.4(b), which was denied. However, at the 3/12/15 hearing, Respondent further amended his Answer on the record, and admitted Count III, confirming that all Counts on the merits of the disciplinary Petition were admitted. *See 3/12/15 hearing transcript, Tr. at p. 6. (All citations to the 3/12/15 hearing transcript shall be cited as "Tr. at ____").*

[2] *In re Vanderslice,* 55 A.3d 322 (Del. 2012); See Joint Exhibits Notebook, Exhibit E. *All references to the exhibits within Joint Exhibit 1 Notebook submitted at the 3/12/15 hearing shall be cited as "Exhibit ____."*

2

violated DLRPC Rules 1.5(f), 1.15(a) and (b), 8.4(b) and (c), and 8.4(d), as a result of Respondent's furnishing deficiently drafted retainer agreements regarding advanced fees, and Respondent's misappropriation of clients' consultation and flat fees from the M&R firm on eight occasions between December 2010 and September 2011, for a total amount of $1,780.00 in stolen fees.[3]

On or about September 5, 2013, Respondent submitted a completed Reinstatement Questionnaire to the ODC, seeking reinstatement to the practice of law in Delaware.[4] In his certified answers to the Reinstatement Questionnaire, Respondent represented, "In October of 2011, I paid Moore & Rutt, PA the full amount of $1780.00 representing the total amount of misappropriated funds."[5] Respondent was deposed by the ODC on November 26, 2013, in connection with his reinstatement petition, and a reinstatement hearing was conducted before the Board on December 12, 2013.[6] The Board issued its report and recommendations on reinstatement on February 18, 2014.[7] Apparently contemporaneous with the Board's report on reinstatement, ODC received a letter notice from M&R relating that the firm had been presented with evidence of another misappropriated client fee when Richard Stutz presented himself at M&R's office to inquire about his $500 retainer fee and a credit.[8] M&R had no record of Mr. Stutz as a client or his file, but Mr. Stutz was able to obtain a copy of his retainer check made

---

[3] *Id.*
[4] Exhibit F.
[5] Exhibit F, p. 10.
[6] Exhibit G.
[7] Tr. at 11 (The Board's reinstatement report was not provided as an exhibit).
[8] Tr. at 11-12, 15.

3

payable directly to the Respondent.[9] On February 20, 2014, ODC filed a motion to stay the reinstatement proceedings, and Respondent ultimately filed a stipulation to withdraw the reinstatement petition in its entirety.[10]

Further investigation by ODC and review of Respondent's personal bank records revealed additional retainer fee checks paid to Respondent for legal matters and clients not contained in M&R's system.[11] Thereafter, on 10/13/14, ODC filed this Petition against Respondent, alleging four new client matters in which Respondent misappropriated fees from the M&R firm between January to September of 2011, for a total of $1,400.00. The balance of the Petition Counts relate to Respondent's conduct from October 7, 2011 through December of 2013, during which Respondent failed to disclose and/or misrepresented the extent of fees he misappropriated from M&R.

A hearing before this Board was conducted on March 12, 2015.

## II.   FACTUAL FINDINGS

The following factual findings are determined from the prior disciplinary proceeding and the Supreme Court's findings in 2012, the admissions in Respondent's Amended Answer to the pending Petition, the hearing exhibits, and the testimony at the 3/12/15 hearing.

Respondent was admitted to the Delaware Bar in 1999.[12] In September 2010, while Respondent was a partner at the law firm of M&R, M&R instituted a 25% pay cut for its

---

[9] Tr. at 12.
[10] Tr. at 12 (Neither the motion to stay nor the stipulation to withdraw the reinstatement petition were provided as exhibits).
[11] Tr. at 93-96, 111,
[12] Petition ¶1.

4

partners due to an economic recession.[13] To mitigate his financial difficulties from this pay cut, Respondent misappropriated clients' fees from the firm between December 2010 and September 2011.[14] Eight occasions of misappropriated fees were discovered by M&R in its review of its books and records. M&R had an established policy requiring the deposit of all attorneys' fees into M&R's trust or operating accounts, and likewise had a policy of opening a file for every firm client, assigning a file number and entering the client's information into its electronic case management program.[15] On October 7, 2011, Respondent was confronted by M&R regarding the firm's discovery of fee retainer receipts and documentation of eight occasions of theft of earned cash attorneys' fees.[16] Respondent admitted to the discovered misappropriated fees, was expelled from M&R on 10/7/11, and was instructed to self-report to ODC within two weeks.[17] Respondent confirmed to M&R that the firm had discovered all of his instances of theft of firm funds, for a total of $1,780.00.[18] ODC thereafter filed its 2012 Petition for Discipline for Respondent's misconduct related to his misappropriation of the earned cash attorneys' fees, and Respondent was deposed in connection with that disciplinary proceeding on 5/9/12, during which Respondent affirmed that the total amount of firm funds he misappropriated was $1,780.00:

> Q. And the total amount you kept was $1,780, correct?
> A. Correct.
> Q. Did you repay Moore & Rutt, the firm, the funds you took?

---

[13] *In re Vanderslice* at 323.
[14] *Id.*
[15] Petition ¶¶4 and 5.
[16] Petition ¶6.
[17] Petition ¶¶7 and 8.
[18] Petition ¶¶9 and 11; *In re Vanderslice*, at 323.

5

A. Correct.
Q. Okay. And so where it says buy-out, there are seven names listed below that, correct?
A. Correct.
Q. And to those seven names reflect the seven clients who paid you cash that you kept?
A. Yeah, the retained fees, yes.[19]

At the disciplinary hearing before the Board on 5/17/12, Respondent testified that there were eight times when he kept earned fees from M&R.[20] Respondent testified at that 5/17/12 hearing that there were never any other instances where he took money from clients and failed to document or deposit the payment with M&R, and Respondent re-affirmed that the total amount of fees that he had stolen from M&R was $1,780.00.[21] Respondent himself, and through his counsel, represented to the Board that Respondent had repaid the full amount of the misappropriated fees he had taken during his tenure at M&R, totaling $1,780.00.[22] Notably, in that 5/17/12 hearing, it was represented to the Board that Respondent failed to remit earned fees to M&R, but he gave the clients credit for having made payment, and therefore "did nothing to secret or secrete the fact that he had received those fees. He actually gave the panel here cash receipts to the clients and recorded those cash receipts in the cash receipts journal maintained by the firm."[23] Respondent testified on 5/17/12 that he was continuing to practice law, and he felt that the quality of his practice "is better now":

I think during that time - - I don't like to talk about myself. But I think that my reputation as a family law attorney is a stellar one. And during that

---

[19] Exhibit C, at 78-79. Petition ¶14.
[20] Petition ¶15; Exhibit D at 78.
[21] Petition ¶¶16 and 17.
[22] Petition ¶¶17 and 18; Exhibit D at 67-68, 43-44, 262.
[23] Exhibit D at 10.

6

time, I think I was a good attorney. But I don't think I was working up to my potential with that. I mean, I got favorable decisions in that time. But I don't know if I had as much compassion for my clients as I, again, do now. Because sometimes you have to go through, you know, when you go through life circumstances and you have to learn from everything that happens to you. And I think through this circumstance, I have learned that bad things can happen to good people.[24]

Respondent testified as of 5/17/12 that he was better able to handle stress and anxiety than he was in 2010 and 2011 because of treatment he received, and that he has thought "every day" about why he took and kept M&R's fees.[25]

As a result of his misconduct, including criminal theft, Respondent was suspended from the practice of law for one year by order of the Delaware Supreme Court on 10/12/12.[26]

On 9/5/13, Respondent noticed ODC of his intent to file a Petition for Reinstatement and submitted his completed Reinstatement Questionnaire, in which he specifically denied that he was aware of any facts concerning conduct which may result in the filing of charges or disciplinary action against him in any jurisdiction, including any state or federal administrative agency, and represented that he paid M&R the "full amount of $1,780.00 representing the total amount of misappropriated funds."[27] On 10/14/13, Respondent filed a *pro se* Petition for Reinstatement with the Board.[28] On 10/21/13, Respondent was disbarred from the Maryland Bar as a result of the 2012

---

[24] Exhibit D at 229-230.
[25] Exhibit D at 225-227.
[26] *In re Vanderslice, supra,* at 323, 326. Petition ¶3.
[27] Exhibit F; Petition ¶¶20 and 21.
[28] Petition ¶22.

7

Delaware disciplinary proceeding findings of misappropriation of funds.[29] In connection with Respondent's Reinstatement Petition, Respondent was deposed on 11/26/13 and a Reinstatement Hearing was held before the Board on 12/12/13.[30] To this Panel's knowledge, there is no evidence that Respondent corrected or amended his Reinstatement Questionnaire or at any time disclosed to the Board or to ODC that the Maryland court had issued a final order of disbarment on 10/21/13 (On 12/6/12, the Maryland court in fact issued a Show Cause Order in which Maryland Bar council sought disbarment. Respondent supplied a response to the Show Cause Order, stating that the Delaware Supreme Court's opinion in 2012 recommended imposing reciprocal discipline of suspension retroactive to 10/12/12, and Respondent further requested that no money judgment be entered against him for costs because he had been unemployed since 10/24/12. The case was scheduled for oral argument on 9/10/13, and Respondent failed to appear. On 9/10/13, the Maryland court issued a per curiam order and disbarred Respondent, and issued its written decision and explanation on 10/21/13). [31]

At his 12/12/13 Reinstatement Hearing, Respondent once again affirmed that he had taken money from M&R on only eight occasions and affirmatively represented that he was "dishonest over a 10-month period,"[32] reiterating, "I stole $1,780,....I did it eight times."[33] Respondent again testified that his life was "on an upward curve as of May 17

[29] *Attorney Grievance Comm'n of Md v. Patrick Edward Vanderslice*, Misc. Docket AG No. 68, Sept. Term 2012 (Md. App. 10/21/13).
[30] Petition ¶¶23 and 24.
[31] *Attorney Grievance Comm'n of Maryland v. Vanderslice*, supra.
[32] Exhibit G at 322.
[33] Exhibit G at 317.

8

[2012]"[34] and that "I believe in May of 2012 I already started rehabilitating myself."[35] Respondent testified that he had rehabilitated himself, completed and was released from counseling, was remorseful that he "[took] money eight different times and I am suspended,"[36] represented that he admitted his thefts,[37] and had "fully resolved" the grief issues that he was dealing with from 2008 and 2009, and the other factors that he testified to in May of 2012 as to why he took the money.[38] Respondent acknowledged that he testified on 5/17/12 that he fully intended to continue to undergo therapy, but that his last therapy session was on 5/31/12.[39] Respondent also testified on 12/12/13 that he had communicated with M&R prior to his suspension and apologized to them, "and we resolved it and I apologized to them at that time."[40] Respondent testified that, until he stopped practicing on 10/12/12, "I handled money all the time. People brought in money, people brought in cash. Again, I think that's very relevant to show my rehabilitation, I handled significant amount of cash."[41] Respondent reiterated, "I was dishonest over a 10-month period, but again, I think you have to look at the time period after what I did when I went out of my firm. There were no complaints, there was no ODC complaints about any dishonesty in the time I was practicing."[42] Respondent represented that he learned that "I have to be even more diligent than any other attorney

---

[34] Exhibit G at 265.
[35] Exhibit G at 266.
[36] Exhibit G at 280.
[37] Exhibit G at 282.
[38] Exhibit G at 306.
[39] Exhibit G at 305.
[40] Exhibit G at 309.
[41] Exhibit G at 319.
[42] Exhibit G at 322.

because I have that label."[43] During the reinstatement proceedings, Respondent never disclosed his instances of theft/misappropriation of undocumented client retainer fees, other than the $1,780 from the eight occasions discovered by M&R. Despite his testimony regarding his heightened obligations of diligence, his rehabilitation, admission and ownership of wrongdoing, Respondent offered no testimony regarding his independent investigation to support of his assertions that his only thefts were the eight matters discovered by M&R totaling $1,780.00.[44]

### Additional Misappropriated Funds:

Beginning on or about February 18, 2014, as a result of Mr. Stutz's appearance at M&R's offices and ODC's investigation, which included Respondent's production of his personal bank records and check deposits between 2010 and 2011[45], the following additional retainer fee payments to Respondent were discovered:

On or about 1/7/11, Respondent received a check in the amount of $500.00 for attorneys' fees drawn on the Mary Boyce/Donna Andrew account ("Boyce") in connection with a Miller Trust.[46] Respondent failed to remit the Boyce attorney fee to M&R and failed to formally open a file at M&R for the Boyce legal representation, nor did Respondent document receipt of the Boyce fee in any M&R firm receipt book, nor make a record at the firm of receipt of that attorney fee, but deposited the Boyce check

---

[43] Exhibit G at 324.
[44] Petition ¶27.
[45] Tr. at 109-112.
[46] Petition ¶28.

10

into his personal checking account at M&T Bank.[47]  Respondent admits that he misappropriated the Boyce attorney fee paid by check.[48]

On or about 1/18/11, Respondent received a check in the amount of $150.00 from Donna Andrew ("Andrew") for legal representation in drafting a Power of Attorney. Respondent did not remit the Andrew legal fee to M&R, nor did Respondent formally open a file at M&R for the Andrew legal representation, nor did he record receipt of the Andrew fee in any M&R firm receipt book, but deposited the Andrew check into his personal checking account at M&T Bank.[49]  Respondent admits that he misappropriated the Andrew legal fee paid by check.[50]

On or about 7/2/11, Respondent received a check in the amount of $250.00 from Kenneth and/or Elizabeth James ("James") for legal representation in drafting a will. Respondent failed to remit the James legal fee to M&R, failed to formally open a file at M&R for the James legal representation, failed to record receipt of the James fee in any M&R firm receipt book, nor make record at the firm of receipt of the attorney fee, but instead deposited the James check into his personal checking account at M&T Bank.[51] Respondent admits that he misappropriated the James legal fee.[52]

On or about 9/1/11, Respondent received a check in the amount of $500.00 from Richard Stutz ("Stutz") for legal representation in connection with a debt collection

---

[47] Petition ¶¶28-32.
[48] Petition ¶33; Exhibit H, 6/12/14 depo tr. at 21-22.
[49] Petition ¶¶34-38.
[50] Petition ¶39; Exhibit H at 11-12.
[51] Petition ¶¶40-44.
[52] Petition ¶45; Exhibit H at 10-11.

11

action. Respondent did not remit the Stutz legal fee to M&R, did not formally open a file at M&R for the Stutz legal representation, did not record receipt of the Stutz fee in any M&R firm receipt book, nor make record at the firm of receipt of the attorney fee, but deposited the Stutz check into his personal checking account at M&T Bank.[53] Respondent admits that he misappropriated the Stutz legal fee.[54] The total sum of the newly-discovered misappropriated fees is $1,400.

At the 3/12/15 hearing, Respondent presented the testimony of Edward S. Wilson, III, a licensed psychologist in the State of Delaware,[55] who was asked by Respondent to perform an evaluation with regard to the presence or absence of psychopathology regarding the matter before the Board.[56] Dr. Wilson performed an evaluation of Respondent on 11/18/14, after which he concluded that Respondent suffers from recurrent major depression.[57] Dr. Wilson opined that Respondent's depression was recurrent in that it "comes and goes because it has not been treated."[58] "So although not a chronic disorder, this disorder has been around with Mr. Vanderslice, in my opinion, for an extended period of time and not well treated."[59] Dr. Wilson referred Respondent to an individual for treatment, but was uncertain whether or not Respondent had begun said treatment.[60] Dr. Wilson offered no opinion on his diagnosis, if any, as to

---

[53] Petition ¶¶46-50.
[54] Petition ¶51; Exhibit H at 12-13.
[55] Tr. at 17.
[56] Tr. at 22.
[57] Tr. at 29-32; Respondent's Exhibit 1.
[58] Tr. at 31.
[59] Tr. at 32.
[60] Tr. at 43.

12

Respondent's global assessment of functioning in 2010, 2011, 2012, or 2013.[61] Although Dr. Wilson initially testified that he reviewed medical records, including those of Dr. Kim, he acknowledged that Dr. Kim's records were not in his file.[62] Dr. Wilson testified that his current diagnosis of Respondent demonstrates that Respondent is functioning at a level below the ability he has, and affects his ability to practice law, his ability to represent a client in court, his ability to try a case in a courtroom, and his ability to conduct legal research and write briefs.[63] Dr. Wilson nonetheless confirmed that his diagnosis would not affect Respondent's appreciation of the wrongfulness of his conduct from December 2010 to December 2013.[64] He also acknowledged that the testing he performed did not include neuropsychological tests that are designed to determine an individual's working memory or cognitive function, although there are tests for this.[65] Dr. Wilson could not offer any opinions as to Respondent's depression during the time period of the alleged misconduct, including during Respondent's concealment or failure to disclose additional stolen fees, nor did he perform any testing or offer diagnoses of deficits in Respondent's cognition or memory relevant to the conduct at issue in this Petition.

Respondent next presented the testimony of witness Timothy G. Willard, Esquire, an attorney with Fuqua, Yuri & Willard.[66] Mr. Willard has known Respondent since at least 2000, and Respondent has worked in Mr. Willard's firm as a paralegal since

---

[61] Tr. at 39.
[62] Tr. at 40-41; 49.
[63] Tr. at 45-46.
[64] Tr. at 46-47.
[65] Tr. at 47-48.
[66] Tr. at 51.

approximately 2013.[67] As a paralegal, Respondent has worked primarily for Mr. Willard, preparing settlement letters, case summaries, legal research, legal memos, and record summary and organization.[68] Mr. Willard attested to the quality of Respondent's work and his judgment and advice.[69] Overall, Mr. Willard was quite satisfied with Respondent's work product, work ethic, and positive attitude, and was considering offering him a position as an associate if Respondent were reinstated.[70]

Respondent testified that he knew the taking of fees was wrong "once my memory came, when I learned about them, I knew I shouldn't have took them."[71] He was aware that he was misappropriating firm fees. Respondent further acknowledged that for the cash fees for which he was previously disciplined, he had written receipts for those clients, had opened paper files with the firm for those clients, assigned a file number for each client, and had entered each client's information into the firm's case management system.[72] Respondent advised M&R that it had discovered all of the instances of theft with the initial eight fee misappropriations because that is what Respondent believed at the time.[73] Respondent admits that this statement was incorrect, "[a]s I found out in February of last year."[74] Respondent did not advise his partners at M&R or ODC of the undocumented clients and four stolen retainers "because I did not recall them. And nobody - - during, through the whole process nobody had requested my bank records or

---

[67] Tr. at 52-53.
[68] Tr. at 54-56.
[69] Tr. at 58-59.
[70] Tr. at 68-70; 72.
[71] Tr. at 80-81.
[72] Tr. at 81.
[73] Tr. at 82-83.
[74] Tr. at 83.

14

anything."[75] When confronted with his lawyer's 2012 statement to the Board that Respondent did nothing to secret the fact that he had received and retained client fees, Respondent testified that it was his attorney's statement, and he only became aware "now" that the statement was not correct.[76] When asked if the total misappropriated fees now comes to $3,100.00, Respondent answered, "Yeah, I think that's approximately it. I don't know."[77] On each occasion of Respondent's prior testimony and representations regarding the extent of his misappropriated fees and full restitution, Respondent testified that he did not recall, was not aware, or otherwise believed his statements to be accurate at the time, denying that he remembered any of the unrecorded clients/retainers or the additional misappropriated fees.[78] With respect to the four checks in question in this Petition, Respondent testified that he personally took the checks on four different dates to his bank and filled out the deposit slips, and that he personally would routinely reconcile his M&T bank account.[79] Respondent deposited the Stutz check on 9/15/11, less than a month before he was confronted by M&R regarding the eight discovered fee matters.[80] Respondent thereafter continued to have communications with Mr. Stutz through at least September 2012.[81]

Between 2008-2010, Respondent had a number of deaths in the family, which he believed caused him to be depressed and affected his productivity.[82] In 2011, prior to his

---

[75] Id.
[76] Tr. at 84.
[77] Tr. at 85.
[78] Tr. at 85-87; 90, 95-96; 109-110.
[79] Tr. at 88, 138.
[80] Tr. at 88-89.
[81] Tr. at 149-150; Exhibit H, at Exh. 2.
[82] Tr. at 116-120.

departure from M&R, Respondent was quite active in the community and various boards. In May 2011, he was elected to the Laurel School Board, and appointed president of the School Board by July 2011; he was also involved in the Lions Club, the Good Samaritan organization, was on the board of DVLS, volunteering at the Office of Child Advocate, and was on the board of Carvel Gardens.[83] Respondent continued to be involved in these charitable organizations and community service groups through the course of his suspension and reinstatement hearing in December 2013, in addition to coaching.[84] Following his termination from M&R, Respondent practiced law with Michael Smith, Esquire and created the law firm of Vanderslice & Smith, until his suspension.[85] Since his 2012 suspension, in addition to his paralegal work for Mr. Willard, Respondent worked as a substitute teacher, and has taken masters classes in special education and was accepted into the ARTC program for teacher certification.[86]

## III.   VIOLATIONS OF PROFESSIONAL CONDUCT

Allegations of professional misconduct set forth in the ODC's Petition must be proven by clear and convincing evidence (Rule 15, Disciplinary Procedure Rules). All allegations raised by the ODC in its Petition were admitted by the Respondent. This Panel finds that the evidence and admitted facts demonstrate, by clear and convincing evidence, that Respondent violated each of the Rules identified in the ODC Petition, with two counts of violating Rule 8.4(d).

---

[83] Tr. at 147-148.
[84] Tr. at 148, 129-131.
[85] Tr. at 124-125.
[86] Tr. at 125-127.

16

Count I alleges that Respondent violated DLRPC Rule 1.15(a) by keeping attorney's fees paid to him in the Boyce, Andrew, James, and Stutz matters, instead of remitting those funds to M&R for deposit into M&R's trust or operating account. Rule 1.15(a) states that an attorney "shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." Respondent admits, and the evidence substantiates, that Respondent received checks and/or funds in each of these four client matters that were paid personally to the Respondent in exchange for legal services provided by Respondent in his capacity as an attorney employee of M&R, and the funds were retained and deposited by Respondent into Respondent's personal bank account and were not remitted to M&R or maintained in a separate trust or operating account. The Board therefore finds that Respondent violated Rule 1.15(a) under Petition Count I.

Count II of the Petition alleges a violation of Rule 8.1(a) for knowingly making false statements of material fact in connection with a disciplinary matter. Respondent admits, and the record clearly demonstrates, that, by denying that he had stolen any other fees beyond the eight occasions discovered by M&R, Respondent knowingly and repeatedly made false statements of material fact throughout the course of his 2012 disciplinary proceeding, and repeated those false statements in connection with his Petition and hearing for reinstatement. Throughout the entirety of events and proceedings over the course of 2 ½ years, beginning when Respondent was first confronted by M&R in October 2011, Respondent took no measures to independently ascertain or verify the amount or number of client/firm funds that he misappropriated

17

during his tenure with M&R. It was only after the reinstatement proceedings that additional misappropriations were unearthed. Only after being confronted with Mr. Stutz's accusations and a resumed ODC investigation, does Respondent now admit that additional fee payments were misappropriated. However, on no fewer than five separate occasions, including in his 5/9/12 deposition, at the 5/17/12 disciplinary hearing, in his 9/5/13 Restatement Questionnaire, his 11/26/13 deposition testimony, and in his testimony at the 12/12/13 Reinstatement Hearing, Respondent "knowingly" falsely denied that he was aware of any facts of additional disciplinary violations, maintained that there existed only eight occasions of misappropriated fees totaling $1780, denied any other instances of keeping money from clients without proper documentation or remittance to M&R, and affirmatively represented that all misappropriated funds had been reimbursed to M&R. Each and every one of these representations were known (or should have been known) to the Respondent to be false; and each such false statement was material to the disciplinary proceeding and the grounds for reinstatement. This Board could, and does in fact, find multiple violations of Rule 8.1(a), although only one count is alleged in the Petition.

Count III of the Petition, which was admitted by Respondent at the 3/12/15 hearing, alleges professional misconduct for committing a criminal act. Rule 8.4(b) states that it is professional misconduct for an attorney to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." 11 *Del.C.* §841(a) provides that an individual is guilty of the criminal act of theft "when the person takes, exercises control over or maintains property of another

18

person intending to deprive that person of it or appropriate it." Based upon Respondent's misappropriation of legal fees taken in the Boyce, Andrew, James, and Stutz matters, Respondent committed the criminal act of theft and therefore violated Rule 8.4(b). The admitted facts and the evidence demonstrate four separate instances of criminal acts of theft by the Respondent in which the Respondent received fees that have yet to be remitted to M&R. This is also consistent with the Court's 2012 determination that Respondent committed criminal theft in violation of Rule 8.4(b) by misappropriating fees.[87]

Count IV of the Petition alleges a violation of Rule 8.4(c) for Respondent's engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation." Respondent admits to conduct involving dishonesty when he misappropriated the legal fees received in the Boyce, Andrew, James, and Stutz matters, in violation of Rule 8.4(c). Although not alleged in ODC's Petition, this Board also finds that Respondent engaged in conduct involving dishonesty, deceit, and misrepresentation when he repeatedly falsely testified under oath that all stolen fees had been identified and remitted to M&R. The Panel finds that Respondent was aware of clients, legal matters, and/or retainer fee checks that he deliberately failed to document in M&R's system; he was aware that there were undocumented retainer fee checks that he personally deposited into his bank account, and then reconciled that bank account. Retrieval of copies of the deposited checks demonstrate that it was clear on the face of the drafts that payment was for legal

---

[87] *In re Vanderslice,* at 326.

19

services.[88] Respondent also failed to claim or pay taxes for these legal fees.[89] Lastly, Respondent was not forthright in his reinstatement questionnaire when he reported that he was under a reciprocal suspension by the Maryland Bar. At that time, it was an interim suspension, with a pending Rule to Show Cause against disbarment; by October 2013, he was disbarred. Respondent never amended his questionnaire response or disclosed his change in standing with the Maryland Bar.

Count V of the Petition alleges a violation of Rule 3.3(a)(1) which states that a "lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." This Count is admitted by Respondent, and the evidence demonstrates that Respondent's false representations and denials since 2011 were made knowingly, in that he was aware of their falseness and/or was wilfully ignorant in failing to conduct any reasonable due diligence to ensure their accuracy or to correct their inaccuracy. Respondent not only failed to disclose his additional fee misappropriations, but also affirmatively and falsely denied and continued to conceal any evidence or knowledge of additional misconduct. Consistent with the Board's findings under Counts II and IV, this Board finds that Respondent repeatedly violated Rule 3.3(a)(1) in knowingly making false statements under oath regarding his knowledge (or lack thereof) of additional misconduct and as to the number and amount of funds he misappropriated from M&R.

---

[88] See, Exhibit H, Exh. 1.
[89] Exhibit H, at p.28.

Count VI and Count VII allege two separate violations of Rule 8.4(d) for engaging in conduct prejudicial to the administration of justice. Both Counts are admitted by the Respondent. Respondent's conduct of committing the criminal act of theft by misappropriating legal fees is conduct prejudicial to the administration of justice; and Respondent's knowingly false statements and omissions in the prior disciplinary proceedings and reinstatement proceedings reflect multiple and repeated acts prejudicial to the administration of justice. A Rule 8.4(d) violation occurs where there is either a breach of a legal duty or a crime of violence, dishonesty, or breach of trust.[90] Respondent's criminal act of theft in misappropriating client/firm funds "indicate[s] [a] lack of those characteristics relevant to law practice."[91] Respondent has also violated Rule 8.4(d) by virtue of his misrepresentations and/or knowing omissions in connection with his disciplinary and reinstatement proceedings. This misconduct interfered with the disciplinary process, and caused unnecessary proceedings and wasted judicial and legal resources, notably to include the resources expended in connection with Respondent's reinstatement proceeding, the subsequent resurrected ODC investigation, and this new Petition and disciplinary proceeding, all of which were avoidable had Respondent been forthright or diligent in identifying and disclosing the extent of his misconduct at M&R.

---

[90] *In re Vanderslice*, at 326-327; *In re Nixon*, 2012 WL 3030517 (Del. July 25, 2012) (holding attorney who had been convicted of possessing drugs violated Rule 8.4(d)); *In re Melvin*, 807 A2d 550, 554 (Del. 2002) (noting that "even if a lawyer's criminal conduct does not result in an articulable injury to another person, public confidence in the integrity of the legal profession is undermined when any lawyer engages in criminal conduct").

[91] Rule 8.4, Comment 2.

21

## IV. RECOMMENDED SANCTION

This Board recommends a sanction of disbarment. In determining the appropriate sanction, the Board considers the ABA Standards for Imposing Lawyer Sanctions and the four factor analysis under those standards: a) the ethical duties violated by the lawyer; (b) the lawyer's mental state; (c) the extent of actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors.[92]

### A. The Ethical Duties Violated by Respondent

Based on his own admissions and the finding of the Panel, Respondent violated Rules 1.15(a), 3.3(a)(1), 8.1(a), 8.4(b), 8.4(c), and 8.4(d) (two counts) of the DLRPC.

### B. Respondent's Mental State

The Rule violations found to exist here require a "knowing" state of mind, which is likewise admitted by Respondent. In his misappropriation of funds, this Board finds, as did the Board and Court in Respondent's 2012 disciplinary matter concerning eight of the 12 misappropriated legal fees, that Respondent acted with the most culpable mental state – that of intent. Respondent acted with the conscious objective and purpose of withholding earned fees from his partners.[93]

Additionally, this Board finds that Respondent also acted with an intentional mental state when he concealed, omitted, and/or falsely denied any other misconduct or additional stolen fees beyond the eight matters discovered by M&R in 2011. This Board finds it both disingenuous and incredulous that Respondent "forgot" any or all other

---

[92] ABA Standards for Imposing Lawyer Sanctions (1992), Section 3.0; *In re Bailey*, 821 A.2d 851, 866 (Del. 2003).

[93] *In re Vanderslice*, at 325.

22

stolen fees, particularly in light of the extent, timing, and uniqueness of the additional measures he took to accomplish these thefts and Respondent's admitted awareness of the wrongfulness of these acts: Respondent deliberately failed to document his representation of Boyce, Andrew, James, and Stutz, some of whom were friends or family, and he failed to record those legal matters or their retainer checks in M&R's system; he did so with the full awareness that this violated protocol of the firm, his ethical and professional obligations, and with the conscious objective of concealing any evidence or "paper trail" of these clients or his receipt of their fee payments. These four instances differed from the other eight thefts because of the additional measures Respondent consciously took to ensure that M&R would have no evidence of either the client representations or receipt of legal fees: he opened no case file in the firm's system, performed no conflict check through the firm's conflicts system, failed to notify his staff of any legal work to be performed on the matters, issued no receipt for the legal fees received, and otherwise left no evidence or record by which M&R or any third party could discover or verify the existence of these legal matters, clients, or fees. Respondent then personally signed and deposited the legal fee checks, one of which (the Stutz check) was deposited by the Respondent only three weeks before he was confronted by M&R; similarly, the same month that M&R confronted him, Respondent personally reconciled his own bank statements, which would have identified these check deposits.[94] The record also demonstrates continued communications between Mr. Stutz and the Respondent in November 2011, December 2011, through September 2012, regarding his representation

---

[94] Tr. at 138.

23

of Mr. Stutz well after the October 7, 2011 confrontation by M&R and before Respondent repeatedly testified under oath denying any other misappropriated fees beyond the eight discovered by M&R.[95]

It is difficult to fathom that a modicum of reflection by Respondent would not have prompted some recall of these other matters. His failure (or refusal) to exert any such reflection, due diligence, or independent measures to ensure the accuracy of his testimony, full disclosure, and restitution contradicts Respondent's purported awareness of the seriousness of the disciplinary proceedings against him and alleged rehabilitation.[96] Even if he had initially forgotten these additional fees, the fact that Respondent deliberately eschewed any self-reflection or independent investigation to ensure candor, compliance, and restitution, is tantamount to intent to deceive and/or conceal his additional misconduct. This is consistent with Respondent's discord with M&R and his belief that he had earned the fees he had stolen. It is also alarming that, despite Respondent's continued legal communications and representation of Mr. Stutz after Respondent's termination from M&R, Mr. Stutz was either unaware of the Respondent's termination from M&R or was under the misguided belief that his September 2011 retainer to the Respondent procured him legal services from the M&R firm.

While it is not inconceivable that Respondent might not recall each and every one of the legal matters or the exact amounts he misappropriated, given his awareness of the

---

[95] Exhibit H, at p. 43-46; 76, and depo Ex. 2.
[96] Tr. at 84-87; 92-94; 151; Exhibit H, at 52-53, 55.

wrongfulness of his acts, his affirmative actions to conceal the existence of these clients and their fee payments, as well as his repeated and separate acts of depositing those fees into his personal bank account, which he personally reconciled on a regular basis, Respondent could not have reasonably (or negligently) forgotten all of these additional misappropriated fees nor reasonably concluded that the eight matters that he was confronted with represented the total number and amounts of misappropriations. It is apparent to the Board that Respondent did not believe that he would be caught or confronted with these four additional matters. This is also evidenced by the fact that none of the 12 thefts were identified by Respondent's voluntary admission or unsolicited independent investigation. His intentional state of mind is further supported by Respondent's motive to minimize the number of disciplinary violations which he faced in the 2012 disciplinary proceeding, to minimize his punishment for same, to avoid owing further restitution to M&R, and to advance his petition for reinstatement.

This Board therefore finds that Respondent was fully aware that he had misappropriated additional legal fees for other undocumented client matters, including one or more of the four matters identified in this Petition, and that Respondent intentionally misrepresented and concealed the fact that he had accepted and misappropriated other legal fees from M&R, and that he did so with the intent to deceive his former M&R partners, the ODC, this Board, and the Delaware Supreme Court.

"Intent" is defined in the ABA Standards as the "conscious objective or purpose to accomplish a particular result." Respondent acted with "intent" in misappropriating legal fees, and in a manner that was not likely to be discovered absent his own voluntary

25

admission; and Respondent acted with "intent" when he repeatedly denied having misappropriated additional fees in any other matters, for the conscious objective and purpose to keep those fees, avoid further penalty or monetary restitution, and in order to support his reinstatement to practice law.

## C.     Actual or Potential Injury

Under the ABA Standards, "injury" is defined as "Harm to a client, the public, the legal system, or the profession which results from the lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little to no' injury." "'Potential injury' is the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."[97]

The Board finds that Respondent's misconduct caused actual injury to the M&R firm, the legal system, the profession, and to the disciplinary proceedings. The Board further finds that Respondent's misconduct caused potential injury to these four clients, in that Respondent chose to represent them without creating a record or case file within the firm's system, presumably failing to perform a proper conflicts check through the firm's conflicts system, or entering the clients' cases into the firm's case management system, which is used as a means of ensuring compliance with applicable case management or court deadlines. Further, there was no measure taken to ensure that the firm did not accept future cases that may conflict with Respondent's representation of

---

[97] 1991 ABA Standards as amended 1992 - Definitions.

these undocumented clients. While no evidence of actual harm to these clients was elucidated, potential harm was reasonably foreseeable.

Actual harm was caused to the firm, regardless of the total amount of fees misappropriated from the firm; and serious injury was caused to the legal system and the legal profession as a result of Respondent's pattern of dishonesty and deceit, requiring this new and separate petition for discipline, Board hearing and Report, and a full hearing and written Board decision on Respondent's Petition for Reinstatement. Respondent's misconduct has caused an unfortunate and exorbitant waste of judicial resources and compromised the disciplinary process, the legal system, and denigrates the reputation of Delaware's legal profession.

## The Presumptive Sanction(s)

The parties agree that ABA Standard 5.12 applies to Respondent's misappropriation of funds and criminal theft, under Counts I, III, IV, and VI in the Petition. Under ABA Standard 5.12, a suspension is the presumptive sanction "when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice." The Delaware Supreme Court similarly applied ABA Standard 5.12 with respect to Respondent's previous disciplinary action for the eight misappropriated fees, and imposed a one year suspension "because Vanderslice intentionally committed a criminal act (theft) eight times over a period of ten months, despite possessing a commendable pro bono record and despite other mitigating factors."[98] With respect to

---

[98] *In re Vanderslice*, at 328.

Counts II, V, and VIII, concerning Respondent's knowingly false statements in connection with a disciplinary matter and to a tribunal, prejudicial to the administration of justice, the parties agree that ABA Standard 6.0 applies for violations of duties owed to the legal system, but disagree as to the applicability of ABA Standard 6.11 or 6.12, which carry presumptive sanctions of disbarment or suspension, respectively. ODC maintains that 6.11 is applicable based upon the evidence that Respondent acted with "intent" to deceive when he misrepresented and falsely testified that he had only committed eight fee misappropriations for a total of $1,780.00. Respondent contends that the four additional misappropriated fees are a part of the "same transaction or series of transactions" that were addressed and for which Respondent was already sanctioned under the prior disciplinary matter, and that a two-year suspension, to be applied retroactively, should be imposed.[99] ODC contends that disbarment is the presumptive sanction, but if the Board does not find intent, it requests a three-year suspension.[100]

The Board is not persuaded by Respondent's contention that the newly-discovered additional misappropriated fees are a part of the same transaction or occurrence for which Respondent was already sanctioned, nor that by being suspended for one year, "That message has been sent to Mr. Vanderslice."[101] Perhaps, had this new disciplinary Petition arisen out of Respondent's voluntary disclosure of the additional nominal fees misappropriated, the sanctions analysis would start and end with suspension, to be applied retroactively as part of the same series of misconduct as those for which

---

[99] Tr. at 186, 180, 188.
[100] Tr. at 173.
[101] Tr. at 186.

28

Respondent had been disciplined, sanctioned, and for which the "message" had been both sent and received. However, it cannot be discounted that the additional misappropriated fees and this additional disciplinary Petition are before this Board solely as a result of Respondent's failure to ensure full discovery and disclosure of his misconduct, and his repeated misrepresentations and concealment of his additional illegal conduct, assuring and reassuring his partners, the ODC, the Board, and the Delaware Supreme Court that he had committed only eight misappropriated fee violations for a total of $1,780.00. Respondent performed no independent investigation in order to ensure that all misappropriated firm fees were not only disclosed, but reimbursed to M&R. Instead, at his deposition on 6/12/14, Respondent testified that he merely relied on whatever matters M&R located in its system[102], and at the hearing, Respondent testified, "And nobody - - during, through the whole process nobody had requested my bank records or anything."[103] It is curious that, despite Respondent's contention that he understood the seriousness of his prior disciplinary action, the fact that he personally signed and deposited the four discovered additional misappropriated legal fees, and the fact that he reconciled his own bank records on a routine basis, coupled by the fact that, once the additional misappropriated fee from the Stutz matter was discovered by the happenstance of Stutz's appearance at M&R offices looking for his attorney, it required a renewed ODC investigation and a mere cursory review of Respondent's personal bank records to unveil additional payments that were clear on the

---

[102] Exhibit H, at p. 52.
[103] Tr. at 83.

29

face of the checks to be for legal services. Additionally, Respondent was able to provide testimony, in his deposition and at this hearing, detailing the legal services that he provided to each of these four clients, yet he claims to have had no knowledge or recollection of the misappropriation of their fees until he was confronted with copies of their checks in 2014. It is only because of Respondent's deceit, concealment, and/or misrepresentations since 2011, that this new Petition has been filed against Respondent and is before this Board. In point of fact, none of the now 12 misappropriated fee matters were ever voluntarily disclosed by the Respondent. It is disconcerting, at minimum, that Respondent, then and even now, relied solely on whatever M&R was able to flesh out from its own case management system, rather than assuming any responsibility or accountability to ensure that there were no other misappropriated fees. Respondent should not be given the benefit of lumping these additional four misappropriated fees as part of a single transaction for which he has already been sanctioned, where it is Respondent himself who could have disclosed or identified these three years ago, and it is only by virtue of his concealment and dishonesty that brought about this new Petition. The Board does not, therefore, give Respondent the credit of "time served" for these four additional misappropriated fees.[104]

Additionally, although the Court in Respondent's prior Petition, and the ODC in this Petition, proffer ABA Standard 5.12 as the applicable standard for Respondent's

---

[104] See *In re Davis*, 43 A.3d 856, 862, 902 (Del. 2012) (Respondent's misconduct underlying his prior suspension, and false statements made in his reinstatement questionnaire that led to discovery of additional misconduct prior to and during his suspension, "cumulatively" reflected an indifference to legal obligations and cumulatively warranted the most serious sanction of disbarment).

30

misappropriation of fees, the Board does not wholly discount the applicability of ABA Standard 5.11, under which disbarment is the presumptive sanction for a lawyer's criminal conduct that includes "intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft." ABA Standard 5.11 also applies where "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." Respondent's conduct falls within both categories of misconduct warranting a presumptive sanction of disbarment under 5.11, not only for his intentional misappropriation of fees, but also for pattern of his intentional conduct involving dishonesty, deceit, and misrepresentation. Respondent's lack of effort to recall or to assist in identifying the full extent of his misappropriation measures was as deliberate as actively concealing them. In the commentary of ABA Standard 5.11, "A lawyer who engages in any of the illegal acts listed above has violated one of the most basic professional obligations to the public, the pledge to maintain personal honesty and integrity. This duty to the public is breached regardless of whether a criminal charge has been brought against the lawyer." While the total amount of fees misappropriated by Respondent are relatively insignificant, it is his intentional and surreptitious conduct against M&R and throughout the disciplinary process that falls within 5.11; this is demonstrated both in the manner by which he misappropriated these four legal fees, leaving no paper trail whatsoever by which he could be caught other than by his voluntary disclosure or self-investigation, and his repeated false statements, concealment, and/or self-serving lack of recall regarding any additional misappropriated

31

fees from clients who had not been subject to the firm's conflict of interest protocol or case management protections; Respondent not only improperly benefited financially from this, but did so under the added benefit of M&R's name and the professional liability coverage and other firm protections that come with that.

Applying Standard 5.11 to Respondent's conduct is also consistent with Delaware precedent.[105] In *Davis*, Davis had been sanctioned with a one-year suspension for false notarizations, failure to safeguard fiduciary funds, and failure to pay taxes. At the end of his suspension, Davis sought reinstatement and submitted a reinstatement questionnaire to ODC. In the course of investigating the accuracy of the reinstatement questionnaire, ODC determined that some of Davis's answers in the questionnaire were incomplete and misleading. This resulted in further inquiry and investigation that ultimately revealed Davis had violated other disciplinary rules both before and during his suspension, and therefore thereafter when he sought reinstatement. As a result of the newly-discovered violations and the misrepresentations on his reinstatement questionnaire, the ODC filed a new petition for discipline against Davis. It was determined that, during his suspension, Davis engaged in a single instance of unauthorized practice of law by providing title and settlement services. It was also discovered that, prior to his suspension, Davis had conducted a real estate settlement while under the influence of alcohol, and that he had been involved in a single-vehicle accident in which he misled or otherwise obstructed the police investigation by

---

[105] *In re Davis*, 43 A.3d 856, 901-902 (Del. 2012); *In re Dorsey*, 683 A.2d 1046, 1048 (Del. 1996) (Respondent convicted of felony theft for misappropriating client funds was "serious criminal conduct" warranting disbarment under Standard 5.11(a), notwithstanding significant mitigating factors).

consuming alcohol after the accident in order to avoid testing for DUI. Additionally, the new petition against Davis sought disciplinary action for Davis's failure to accurately report his additional misconduct prior to his original disciplinary proceeding and suspension, and for his misrepresentations in his reinstatement questionnaire.[106] The Court took into consideration the fact that the underlying conduct that led to Davis's original suspension involved acts of deception, and that Davis engaged in at least one further act of misrepresentation and deceit by making false or misleading statements in his reinstatement questionnaire. The Court found that Davis had "knowingly" violated the suspension order by meeting with a client to provide legal advice, and that the totality of his actions "cumulatively warranted the most serious sanction of disbarment."[107] Like Respondent, Davis "compounded that misconduct when he made misrepresentations to an arm of this Court in his Reinstatement Questionnaire."[108] The Court deemed Davis's mental state to be "knowing" or "negligent" with respect to his misconduct, with the sole exception that Davis acted intentionally in consuming alcohol in order to prevent the police from performing an alcohol test for DUI after his auto accident.[109] The Court concluded that Davis's misconduct was knowing and deceptive "if not criminal" when he filed for reinstatement and was required to demonstrate his rehabilitation; his knowingly false answers resulted in further investigation that revealed additional ethical violations both before and during his suspension.[110] Although some of Davis's violations

---

[106] *In re Davis* at 858-860.
[107] *In re Davis* at 862, *citing, In re Green*, 464 A.2d 881, 885 (Del. 1983).
[108] *Id.*
[109] *Id.* at 898-899.
[110] *In re Davis* at 866.

33

occurred prior to his suspension, the Court treated the new petition as new and separate acts of misconduct that evidenced a continuing pattern of misrepresentation for personal benefit, causing injury to the profession, and therefore implicating ABA Standard 5.11, specifically with respect to Davis's deceit and dishonesty in advancing his potential reinstatement to the Bar.[111] The analogous fact pattern and cumulative pattern of misconduct by the Respondent in this case similarly falls within ABA Standard 5.11 and the sanction of disbarment.

Since the Board concludes that Respondent's statements and testimony under oath regarding disclosure of fees he misappropriated during his tenure with M&R were done with the intent to deceive and/or to withhold material information, and that this deceit caused actual injury to his firm, the legal profession, and the legal system and disciplinary process, in addition to potential injury to clients, Respondent has breached virtually all of the ethical duties articulated in the ABA Standards "Theoretical Framework"[112], including duties of loyalty to preserve the property of a client, avoid conflicts of interest, duty of candor, duties to the legal system, and duties to the legal profession. *Id.* Additionally, the ABA Standards denote that they do not account for multiple charges of misconduct, but that the ultimate sanction imposed "should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct. Either a pattern of misconduct or multiple instances of misconduct should

---

[111] *Id.* at 900-902.

[112] ABA Standards, as amended February 1992, pgs. 5-7.

be considered as aggravating factors."[113]

Under ABA Standard 6.11, disbarment is appropriate "when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potential serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding." The Board finds this standard to be most applicable to the aggregate Counts of misconduct by the Respondent, coupled by his "intentional" state of mind, making disbarment the presumptive action. Updated annotations to the ABA Standards note that disbarment is appropriate where there are multiple dishonest acts under Standard 6.11 for instances of intentional dishonesty that cause serious or potentially serious injury to a party or significant or potentially significant adverse effect on a legal proceeding.[114] Commentary to Standard 6.0 also suggests that disbarment is the

---

[113] ABA Standards, as amended February 1992, pg. 7.

[114] Annotated ABA Standards, as amended 2015, Section 6.0: "A lawyer who engages in deceptive conduct in legal proceedings violates the most fundamental duty of an officer of the court." *See People v. Costa*, 56 P.3d 130, 135 (Colo. O.P.D.J. 2002) (disbarment warranted under Standard 6.11 for a lawyer who made material misrepresentation to the court about discovery in a personal injury matter, misconduct that "invariably bears a potentially significant adverse effect on the legal proceeding, places the client at significant risk, demeans the profession and diminishes the public trust in the administration of justice."); *In re Quaid*, 646 So. 2d 343, 350 (La. 1994) (disbarment was warranted under Standard 6.11 for a lawyer who, among other misconduct, made false statements in documents and testimony before the Social Security Administration in attempt to receive additional fees: "Respondent presumably engaged in such deception in order to protect his own situation as an attorney and to safeguard for himself the fees he had improperly collected from his client. Such conduct violates the most fundamental duty of an officer to the court."); *In re Caranchini*, 956 S.W.2d 910 (Mo. 1997) (Disbarment was warranted under Standard 6.11 for misconduct that included intentionally submitting false documents and making false statements and intentionally withholding material information: "This misconduct is an affront to the fundamental and indispensable principle that a lawyer must proceed with absolute candor towards the tribunal. In the absence of that candor, the legal system cannot properly function...the protection of the public and the maintenance of the integrity of the legal profession require the most severe sanction available." *Id.* at 919-20); *Fla. Bar v. Rightmyer*, 616 So. 2d 953, 955 (Fla. 1993) (Disbarment was warranted based on perjury: "No breach of professional ethics, or of the law, is more harmful to the administration of justice or more hurtful to the public appraisal of the legal profession than the knowledgeable use by an attorney of false testimony in the judicial process. When it is done it deserves the harshest penalty."); *In re Barber*, 904 P.2d 620 (Or.

appropriate sanction "when the dishonest acts occur in the context of disciplinary proceedings."[115] *See, People v. Hellewell*, 27 P2d. 527 (Colo. 1992) (Misconduct including attempting to mislead the Court regarding conversion of client funds during disciplinary proceedings for suspension warranted disbarment under Standard 6.11); *Fla. Bar v. Orta*, 689 So. 2d 270 (Fla. 1997) (Lawyer originally suspended for three years for tax evasion was disbarred under Florida Standard 6.11 for making intentional false statements about assets during his reinstatement petition).

ABA Standard 6.11 was similarly applied for analogous, albeit arguably more egregious, conduct in *In re Clyne*.[116] In *Clyne*, Clyne was transferred to disability inactive status due to his admitted alcoholism and enrollment in an alcohol abuse treatment facility.[117] After his alcohol rehabilitation treatment, Clyne sought transfer to active status, and in the course of doing so, denied that he had had any alcohol since his treatment enrollment and caused a three month delay in producing his financial records to the ODC in connection with its investigation.[118] Prior to his request for reinstatement

---

1995) (Disbarment under 6.11 for intentionally altering fee agreement by deleting another lawyer's name and misrepresenting time and expense on statement for fees caused "potential for serious injury to legal system and legal profession, creating potential to mislead court, undermine the judicial process, and interfere with litigation outcome"); *In re Munroe*, 89 A.D. 3d 1, 8 (N.Y. App. Div. 2011) Reciprocal disbarment instead of two and a half year suspension for lawyer's "egregious pattern of misconduct for fabricating stock certificates to support false claims to the courts and disciplinary counsel, with the court finding that 'the only conceivable purpose of such fabrication is personal gain'"); Annotated ABA Standards, as amended 2015, commentary, Standard 6.11, *citing In re Clyne*, 581 A2d. 1118, 1126 (Del. 1990) (Disbarment under Standard 6.11 for misconduct including misrepresentations to the Court and forged certificates of service, with the Court noting that disbarment is the most serious sanction normally reserved for cases of misappropriation and other instances when a lawyer's conduct poses a continuing danger to the public.)

[115] Annotated ABA Standards, 6.1, commentary, annotations as amended 2015.
[116] *In re Clyne*, 581 A.2d 1118 (Del. 1990).
[117] *Id.* at 1122.
[118] *Id.*

36

to active status, Clyne had engaged in myriad misrepresentations, including falsifying documents, forgery, and providing false or fraudulent explanations for his failure to file timely briefs in two cases.[119] The Court nonetheless focused on the fact that, while Clyne's earlier falsifications and misrepresentations were at a time when his judgment was impaired by alcohol, his conduct of dishonesty and deceit, including his misrepresentations regarding his fitness to practice law, warranted disbarment under ABA Standard 6.11.[120] The *Clyne* Court also noted that Clyne's willingness to be frank to recant his lies "came only when the Respondent was confronted with no other way out."[121] Clyne's alcoholism was not deemed to be a mitigating factor with respect to his misrepresentations in seeking reinstatement, and, despite the fact that Clyne had no prior disciplinary violations, the Court applied ABA Standard 6.11 for Clyne's false statements and the significant adverse effect on legal proceedings caused, not only by his misconduct prior to his inactive status, but notably due to his lack of candor and "complete abandonment of the fundamental concept of candor that is essential to the continued practice of law."[122]

The Board further believes that disbarment is appropriate in this matter, to protect the interests of the public and the administration of justice, to deter others from engaging in similar misconduct, and to preserve confidence in the profession and legal system.[123]

---

[119] *Id.* at 1120-1121.
[120] *Id.* at 1123, 1126.
[121] *Id.* at 1123.
[122] *Id.* at 1126.
[123] See *In re Christie*, 574 A.2d 845, 851 (Del. 1990); *In re Clyne*, 581 A.2d 1118, 1125 (Del. 1990).

37

D.     The Existence of Aggravating and Mitigating Circumstances

Following the determination of the presumptive sanction of disbarment, the Panel must consider aggravating and mitigating circumstances before recommending the final sanction to be imposed.[124]  Aggravating factors or circumstances are those that might justify an increase, and mitigating factors are those that might justify a decrease, in the degree of discipline to be imposed.

Aggravating Factors

From the list of factors included in the ABA Standard 9.22, the Board finds the following aggravating factors:

(a)     Prior disciplinary offenses.     Although Respondent contends that the misconduct at issue in this Petition arises out of the same transactions and series of misconduct for which Respondent has already been, and was still in the course of being, sanctioned, the violations under this Petition are both new and separate from his prior offenses, and they reflect a lack of remittance for his prior disciplinary offenses. Respondent was previously deemed to have committed serious disciplinary violations, sanctioned, paid restitution, and then sought reinstatement, contending his fitness to practice law, his full restitution and rehabilitation.  Although Respondent's additional misappropriated fees occurred during the course of the same time period for which he was already prosecuted and sanctioned, not only are these four misappropriated fees different from the prior eight in that Respondent actively and overtly concealed any paper trail or evidence of his representation of these clients and their retainer fees, but

---

[124] ABA Standard 9.1

38

Respondent also committed further disciplinary violations during his suspension and restitution efforts, and it is those misrepresentations that form the basis for this additional disciplinary Petition. Therefore, while he was already under sanction for misappropriation of fees, Respondent committed further misconduct, separate and apart from his prior disciplinary offenses, to warrant consideration of prior disciplinary offenses as an aggravating factor.

(b) Dishonest or selfish motive. By misappropriating fees, the Delaware Supreme Court has already deemed this conduct to be dishonest and selfish in motive.[125] This Board further finds that Respondent's intentional misrepresentations and/or willfully ignorant omissions regarding the additional misappropriated fees were in an effort to retain financial benefit from the undiscovered fees, to avert further or more severe sanctions and/or additional restitution to M&R, and to procure his reinstatement to practice law and the anticipated additional income that would come with that.

(c) A pattern of misconduct. By misappropriating multiple fees, this is demonstrative of a pattern of misconduct.[126] Although these four additional misappropriated fees occurred during the same ten-month period of the previously-discovered eight misappropriated fees, this demonstrates a different pattern of misconduct more surreptitious than those of the prior eight misappropriated fees, since these four were deliberately undocumented with the obvious intent of personal gain with little risk of discovery. Further, Respondent's repeated misrepresentations to his firm, the

---

[125] *In re Vanderslice,* supra at 325, 328.
[126] *Id.*

ODC, the Board, and to the Supreme Court, that he had not committed any further disciplinary violations, demonstrate a pattern of misconduct, from at least 2010 to 2014.

(d) Multiple offenses. The Board does not give the Respondent the benefit of discounting the additional four misappropriated fees as part of his prior offenses, since only the Respondent, himself, was in the position to disclose them. Further, Respondent should not receive the benefit of including the newly-unearthed misappropriated fees as merely a part of the same offenses for which he's already been disciplined, when Respondent's separate and new acts of misconduct created the need for a new Petition and disciplinary proceeding. Therefore, the Board deems these four misappropriated fees as additional offenses, beyond those for which he has already been sanctioned. Respondent also committed repeated misrepresentations throughout the course of his prior disciplinary action and since his suspension. The multiple counts of disciplinary violations substantiate a finding of an aggravating factor of multiple offenses.

(e) and (f) Although not raised by the ODC at the hearing, the legal resources and proceedings that have been necessitated by Respondent's misappropriation of fees and concealment and misrepresentation of same, including the unnecessary and duplicative depositions, hearing proceedings, Board reports and costly judicial resources, justify the additional aggravating factor of bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency. By concealing and misrepresenting the extent of misappropriated fees, Respondent obstructed a full and complete prior disciplinary and sanctions proceeding. Additionally, Respondent submitted false evidence, false statements, and otherwise

40

acted with deceptive practices during his disciplinary process, by concealing and/or misrepresenting his additional misconduct during his tenure with M&R.

(i) **Substantial experience in the practice of law.** Respondent has been admitted to the Bar since 1999, and his substantial experience in the practice of law has previously been deemed as an aggravating factor under his prior disciplinary action.[127]

(j) **Indifference to making restitution.** While this was not raised as an aggravating factor by the ODC, the Board has some concern with the fact that Respondent has taken no actions since his additional misappropriated fees were discovered in 2014 to provide restitution to M&R for those fees. Although there was testimony at this hearing that a promissory note had been signed, no details were provided regarding the terms of the promissory note or any actual payments made.[128] Respondent testified in his deposition of 6/12/14, that he had not yet taken any efforts to repay M&R the additional fees that he had misappropriated, contending that his and his wife's joint wages prevented him from doing so.[129] There was no indication at his deposition in 2014 that Respondent had any plans of negotiating a repayment plan with M&R. Further, notwithstanding the wages that Respondent testified that he and his wife were receiving, given the nominal amount of the misappropriated fees, and the years in which those fees are in arrears, the Board finds the Respondent largely indifferent to making restitution to M&R, with whom he clearly had an adversarial relationship during the time period of

---

[127] *In re Vanderslice*, at 328.
[128] Tr. at 152.
[129] Exhibit H at p. 63.

his misappropriations and following his termination. It appears as if reimbursing the firm for the misappropriated fees is last on the Respondent's list of financial obligations.

(k)   Illegal conduct. By admitting criminal conduct of theft, Respondent has engaged in illegal conduct. Further, the Board's conclusion that Respondent was aware of additional misappropriated fees and/or clients whom he represented on behalf of M&R, and repeatedly testified to the contrary, is tantamount to perjury.

### Mitigating Factors

ABA Standard 9.32 sets forth a non-exhaustive list of mitigating factors to be considered that may justify a reduction in the sanction to be imposed. Respondent argues that the Board should consider mitigating factors of good character or reputation, emotional or personal problems, and voluntary cooperation with ODC and disciplinary proceedings. The Board finds none of these factors to mitigate Respondent's misconduct or to warrant a reduced sanction. The Board does acknowledge, and give some consideration to, Respondent's reputation and character with respect to his pro bono and voluntary community work. It is clear to the Board that Respondent is an active participant in various public service organizations, including school boards, church boards, coaching, and other pro bono work within the confines of his suspension. However, as the ODC pointed out, Respondent's "good character" as an officer of the Court is called into question in light of his cumulative pattern of dishonesty: "[G]ood character is based on honesty and candor, and although he had an exemplary public service record, and has continued with that, that is far different than the character that's considered to be of good character and reputation for the purpose of mitigation in this

42

type of proceeding."[130] This Board agrees that, while Respondent's public service record is commendable, it is difficult to find good character as a mitigating factor in a case in which the Board has concluded that Respondent has repeatedly intentionally deceived, concealed, and perpetuated illegal and dishonest conduct, at the expense of his former firm in which he was a partner, at the potential risk of the clients whom he represented under that firm's name, and in interference with and defiance of the disciplinary process. The fact that Respondent was disgruntled with his employer and in financial dire straits was his explanation for misappropriating fees. However, his perpetuation of that fraud for the following three years, including in the course of his attempt at reinstatement, while concealing additional misconduct for which he did not think that he would be held accountable, flies in the face of good character, particularly in its affront to the fundamental and indispensable principle that a lawyer must proceed with absolute candor and honesty to the courts, clients, and the legal system.[131]

This Board finds that Respondent's pattern of misconduct, deceit, and lack of candor to his firm partners, the ODC, this Board, and the Supreme Court violate the most fundamental oath of a Delaware attorney of good moral character and use of no falsehood. See, *In re Davis*, supra.

The Board does not deem Respondent's emotional or personal problems as a mitigating factor in this matter, just as the Supreme Court negated the same arguments as a mitigating factor in Respondent's prior petition. Respondent's medical expert

---

[130] Tr. at 174.
[131] *In re Davis*, supra.

43

provided no opinions or testimony regarding the Respondent's emotional diagnosis or cognitive deficits during the period of his misappropriation of funds in 2010 and 2011, nor during his perpetuation of that fraud between 2011 and 2014. His diagnosis of major depression was only as of his examination of Respondent in November of 2014, well beyond the events of misconduct at issue in this Petition. Further, Respondent's medical expert performed no testing, nor offered any opinions, regarding Respondent's memory deficits or cognitive deficiencies that would explain Respondent's inability to recall, or incapacity to disclose, the additional theft of clients and fees from M&R. There is no evidence that Respondent was unaware of the wrongfulness of his acts in misappropriating fees or in concealing and misrepresenting any evidence of these clients or legal fees. Dr. Wilson could offer no opinions regarding Respondent's mental or functional status during the relevant time period between 2010 and February 2014. Respondent's current diagnosis of major depression is irrelevant to the period of misconduct at issue before this Board. Respondent's testimony and activity levels demonstrate that after he left M&R his personal and professional life was on "an upward curve"[132] and his functional level appeared to be above average, in light of his paralegal work for Attorney Willard and his numerous activities as coach, teacher, and board member for various entities. Therefore, the Board cannot and does not consider any alleged personal or emotional problems, nor Respondent's recent diagnosis of major depression, to be a mitigating factor relevant to the misconduct at issue; nor is this a condition relevant to this Board's assessment of Respondent's mental state of intent when

---

[132] Tr. at 143-144; Exhibit G at 265.

44

he misappropriated fees and when he failed to disclose, misrepresented, or otherwise concealed material facts to the ODC and in his reinstatement proceedings.

The Board does find that Respondent expressed remorse for his misconduct, although the remorse expressed was prompted by the ramifications of being caught. Respondent offered no testimony expressing remorse to M&R, to ODC, or to the Board for the extensive waste of their resources caused by his misrepresentations.

## CONCLUSION

The Board's recommended sanction is disbarment. The Board considers both the ABA Standards as a guide, as well as Delaware and analogous case law. The Board finds that ABA Standards 5.11 and 6.11 are applicable to Respondent's cumulative misconduct of dishonesty. The ODC submitted a number of cases involving similar, but not identical, violations as those here, in which the sanction was either suspension or disbarment. The Board finds the *Davis* and *Clyne* cases most analogous, in which disbarment was the appropriate sanction. Both matters involved deceit or dishonesty in connection with disclosure of prior misconduct and in connection with reinstatement proceedings. The *Clyne* Court noted that efforts to hide misconduct indicates a dishonest motive, and coupled with an attempt to obstruct a disciplinary proceeding, reflects a refusal to acknowledge the wrongful nature of one's conduct.[133] The *Davis* decision is most instructive in its analysis of the importance of the fundamental oath of a Delaware attorney to demonstrate good moral character and the use of no falsehood. The *Davis* Court noted that good moral character, honesty, and candor are the cornerstones of the

---

[133] *In re Clyne* at 1126.

45

oath of a Delaware attorney and his duty to the public and the legal profession. Not unlike the matter before this Panel, Davis presented testimony of mental disability, which was rejected as a mitigating factor because the expert had no contact with Davis during the time of his violations and could offer no opinion as to whether Davis's depression or alcohol abuse was a causal factor in any of the ethical misconduct.[134] Like Davis, when Respondent filed for reinstatement, he was required to demonstrate his rehabilitation, but instead, his answers on the reinstatement questionnaire were inaccurate, at minimum misleading. Similar to *Davis*, "Respondent before and during suspension violated [standards of personal integrity and honesty] in what even Respondent concedes was a pattern of misconduct."[135] Moreover, false statements during disciplinary proceedings, particularly in connection with representations to this Court as to one's honesty, rehabilitation, and fitness to practice law, are treated under Delaware precedent much more harshly than other misconduct.

The *Becker* and *Hull* cases are analogous, but distinguishable because substantial mitigating factors were considered by the Court in those cases to warrant a sanction of suspension, rather than disbarment. In *Becker*, the attorney, while on probation, failed to comply with the terms of his probation, failed to respond to the ODC and its requests, and made false statements on his Certificate of Compliance. The Court found a number of mitigating factors to justify imposing a three-year suspension.[136] In *Hull*, the attorney was sanctioned with suspension for material misrepresentations to a bankruptcy court

---

[134] *In re Davis* at 903.
[135] *Id.* at 905.
[136] *In re Becker*, 947 A.2d 1120 (Del. 2008).

and providing false information to ODC regarding mishandling of client cases. However, mitigating factors including remorse, no dishonest or selfish motive, and personal and emotional problems warranted a sanction of suspension.[137]

The ODC also submitted a Maryland decision, *In Re Vanderlinde*, wherein the attorney was disbarred for misappropriating firm money.[138] In *Vanderlinde*, the Court noted its intolerance for an attorney's conduct of intentional dishonesty, including misappropriation, fraud, or criminal theft. Similarly, in the Maryland reciprocal discipline case for Respondent, in response to the 2012 Delaware disciplinary action, the Maryland Court rejected a reciprocal sanction of suspension, "even though the Delaware Supreme Court only imposed a suspension of one year, disbarment is the appropriate sanction in this case."[139] The Maryland Court noted that Respondent's conduct of misappropriating fees warrants "substantially different discipline" in Maryland because an attorney's intentional misappropriation of funds, absent compelling extenuating circumstances, warrants disbarment. Although this order of disbarment was issued on 10/21/13, Respondent failed to correct his responses in his Reinstatement Questionnaire concerning his standing in other jurisdictions, nor did he disclose his Maryland disbarment status during his 12/12/13 reinstatement hearing.[140]

In addition to the intentional dishonest conduct of misappropriating funds, Respondent compounded that misconduct by perpetuating a cover-up for additional

---

[137] *In re Hull*, 767 A.2d 197, 201 (Del. 2001).
[138] *Atty Grievance Comm'n of Md v. Vanderlinde*, 364 Md. 376, 773 A.2d 463 (Md. App. 2001).
[139] *Attorney Grievance Comm'n of Md v. Patrick Edward Vanderslice*, Misc. Docket AG No. 68, Sept. Term 2012 (Md. App. 10/21/13).
[140] Exhibit F, p. 4; Exhibit G, 12/12/13 hrg. transcript.

47

misappropriated funds and repeatedly misrepresenting the extent and scope of his misconduct, demonstrating a propensity to lie, a risk to the public and to the legal profession, in direct contrast to the high standards to which Delaware holds its lawyers. Even if a presumptive sanction were to be deemed suspension in this case, the aggravating factors outweigh the mitigating factors to justify a more harsh sanction of disbarment.

The Board finds that the sanction of disbarment serves the primary purpose of disciplinary proceedings to protect the public, to foster public confidence in the Bar, to preserve the integrity of the profession, and to deter other lawyers from similar misconduct. "Maintaining high standards of professional and personal conduct for persons admitted to the Bar of this Court is essential to ensure the proper administration of justice within the judicial branch of our government."[141] Two fundamental ethical principles in the Delaware oath are to act with fidelity to the Court and to use no falsehood."[142] Respondent violated these fundamental ethical principles both before and during his suspension, and thereafter when he sought reinstatement. Good moral character is the "*sine qua non* to be a member of the Bar of the Delaware Supreme Court, and Officer of this Court."[143]

---

[141] *In re Davis* at 863.
[142] *In re Davis* at 866.
[143] *Id.*

48

BOARD ON PROFESSIONAL RESPONSIBILITY

_____

DANIELLE K. YEARICK, ESQUIRE
Panel Chair

_____

WAYNE J. CAREY, ESQUIRE

_____

LOUISE ROSELLE

Dated: ___5/22___, 2015

49

BOARD ON PROFESSIONAL RESPONSIBILITY


_____
DANIELLE K. YEARICK, ESQUIRE
Panel Chair


_____
WAYNE J. CAREY, ESQUIRE

_____
LOUISE ROSELLE


Dated: _5/22___, 2015

49